IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 9, 2023

**MARSHALL G. TATE v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Franklin County**
**No. 20-CR-174      Bradley D. Sherman, Judge**

_____

**No. M2022-01358-CCA-R3-PC**
_____

After remand by the Tennessee Supreme Court, we reconsider Petitioner's, Marshall G. Tate's, appeal from the Franklin County Circuit Court's order denying him post-conviction relief. On appeal, Petitioner argues he received ineffective assistance of counsel when he pleaded guilty to driving with a blood alcohol concentration of .08 percent or more (DUI per se). Petitioner also argues counsel's ineffective assistance rendered his guilty plea unknowing and involuntary. Following our review of the record, the parties' briefs, and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JILL BARTEE AYERS, JJ., joined.

Michael D. Hall, Winchester, Tennessee, for the appellant, Marshall G. Tate.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Taffy Wilson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts and Procedural History**

A. Guilty Plea Proceedings

In March 2020, the Franklin County Grand Jury indicted Petitioner in case number 20-CR-174 for one count of DUI per se, one count of driving under the influence of an intoxicant, and one count of reckless driving, all Class A misdemeanors.

On August 27, 2020, Petitioner appeared with trial counsel ("Counsel") and pleaded guilty to one count of DUI per se, first offense. At the guilty plea hearing, the State gave the following factual account of the crime, which occurred December 24, 2018:

> We believe the officer would testify that he was dispatched to a minor motor vehicle accident here in Franklin County. He would testify he came in contact with [Petitioner]. During the accident investigation, it was discovered that [Petitioner] was an operator of one of the vehicles. The officer would indicate that [Petitioner] appeared to be - - have consumed alcohol. He appeared to be unsteady. He would eventually have him do some field sobriety tasks, which he would describe as being done in a fashion that was not satisfactory. They ultimately arrested him for DUI. He did submit to a blood alcohol level that did come back above the legal inference and he was charged with DUI.

At the plea hearing, when the trial court asked Petitioner whether the facts recited by the State were true, Petitioner acknowledged he heard them and responded with "[o]h no, they true." Petitioner affirmed to the trial court that he was literate and that he had reviewed his guilty plea with Counsel. Petitioner also stated that he was satisfied with his legal representation and denied being forced, pressured, or intimidated to enter a guilty plea. He waived his right to a jury trial and the right to appeal his conviction.

The State recommended Petitioner serve eleven months and twenty-nine days in jail. At the time of his guilty plea, Petitioner was on parole for an underlying conviction of first degree murder. Petitioner acknowledged his parole status in the following exchange with the trial court:

> THE COURT: How much more time do you have on parole?
>
> PETITIONER: What? This charge right here been holding me back. I was supposed to have met the parole board back in May.
>
> THE COURT: Okay. What were you -- what were you doing time for on parole?
>
> PETITIONER: Murder, murder, one. I had did 30 calendar years on it.
>
> THE COURT: How long -- how many years have you been serving time of that?

- 2 -

PETITIONER: Thirty years on it.

THE COURT: As soon as you got out, you started drinking?

PETITIONER: No, no. No, I stayed out, I've been out 'bout eight years. But you know, I'm saying I've got the violation, you know. The least little thing up on life sentence I got, I got a life sentence, but up under the law I got, the least little thing will violate me.

THE COURT: Yeah.

PETITIONER: If I come in contact with the law, that's a violation.

THE COURT: Well, you took a heck of a risk then, didn't you?

PETITIONER: Well, yeah, I guess, I guess you'd say that, but I won't take nary nother, though.

THE COURT: All right, well, I don't know all the facts of the murder situation that's very serious, but you know, if you get this -- even if you're getting a few years of your life free don't blow it and end up back in the penitentiary again.

PETITIONER: No, cause I was doing -- I was doing pretty good 'bout them eight years. Had a job and everything, was working and everything, at Tempro out here.

THE COURT: Okay.

PETITIONER: Cause like I said, one time -- accidentally one time, you know.

THE COURT: Okay.

PETITIONER: You know, get caught up one time, you know, make mistakes.

THE COURT: All right.

PETITIONER: Well, I'm try to let that mistake make it happen no more though.

THE COURT: All right. Well, good luck to you, I hope we don't see you back in court again, I'll accept what's been recommended.

As a result of his DUI arrest, Petitioner was held without bond and had served more than a year in jail at the time of his guilty plea. Petitioner told the trial court he understood the direct and collateral consequences of the guilty plea, and the trial court found a legal and factual basis for the plea, and that Petitioner pleaded guilty freely, knowingly, and voluntarily. The court sentenced Petitioner to time-served.

## B. Direct Appeal

On October 20, 2020, Petitioner filed a pro se notice of appeal from the circuit court's judgment. This court entered an order on November 19, 2020, observing that his notice of appeal was untimely. *State v. Tate*, No. M2020-01477-CCA-R3-CD, Order at 1-2 (Tenn. Crim. App. Nov. 19, 2020). This court also observed that a guilty plea normally waives a defendant's right to appeal and that none of the circumstances which would permit an appeal following a guilty plea applied to Petitioner's case. *Id.* (citing Tenn. R. App. P. 3(b)(2), Tenn. R. Crim. P. 37(b)(2)). Accordingly, this court ordered Petitioner to explain "why this Court should waive the thirty-day deadline and allow this appeal to proceed." Counsel requested additional time to confer with his client and file a response with this court. Meanwhile, Petitioner filed a pro se response alleging "the affidavit of complaint and arrest warrant [were] void and invalid" and that his prosecution was barred by the statute of limitations. This court granted Counsel more time to file his response, but no response was filed by Counsel.

On February 5, 2021, this court entered an order dismissing Petitioner's appeal. *State v. Tate*, No. M2020-01477-CCA-R3-CD, Order at 2 (Tenn. Crim. App. Feb. 5, 2021). We concluded that Petitioner's appeal was untimely, and that Petitioner's guilty pleas waived his claims concerning defects in the warrant and the statute of limitations, and that none of the limited exceptions to filing an appeal after a guilty plea applied. *Id.*

## C. Post-Conviction Petition, Motion to Disqualify and Hearings

On March 31, 2021, Petitioner filed a pro se petition for relief from his conviction and sentence. In his petition, he alleged that Counsel was ineffective for three reasons: (1) Counsel failed to challenge his indictment in the trial court, (2) Counsel failed to challenge probable cause on appeal, and (3) Counsel failed to challenge the statute of

- 4 -

limitations before his prosecution commenced. Petitioner also asserted that Counsel's ineffective representation rendered his guilty plea involuntary and unknowing. Petitioner was then appointed counsel to represent him in the post-conviction matter.

On July 21, 2021, Petitioner filed a motion to disqualify the 12th Judicial District Attorney General's Office from his post-conviction proceedings because the Assistant District Attorney General assigned to his case had represented him in a previous post-conviction case related to Petitioner's previous conviction for first degree murder. On October 12, 2021, Petitioner, through counsel, filed an amended petition for post-conviction relief, pleading additional grounds that Counsel was ineffective for failing to move to suppress Petitioner's blood sample, and for failing to move to disqualify the entire District Attorney General's office in his DUI case.

On December 14, 2021, the post-conviction court held a hearing on the disqualification motion and denied Petitioner's motion. In denying Petitioner's motion, the post-conviction court found the Assistant District Attorney General's representation of Petitioner was brief, and it could not "infect in some way [Petitioner's] rights in an entirely separate issue and different case 35 years later." On December 29, 2021, and January 24, 2022, Petitioner filed pro se motions to disqualify the judge assigned to his post-conviction case and two complaints against the judge with the Board of Judicial Conduct.

Prior to the post-conviction hearing on August 23, 2022, Petitioner withdrew his motions for recusal of the judge from his post-conviction case. At the hearing, two witnesses testified: Petitioner and Counsel. Petitioner testified he had been in jail for approximately eighteen months at the time of the plea hearing, and the Tennessee Department of Correction (TDOC) had revoked his parole. Petitioner claimed he told the trial court he did not want Counsel to represent him, but Petitioner said Counsel "begged to get on [his] case," so the trial court appointed him. Afterwards, Petitioner claimed he only saw Counsel the three times they went to court. Petitioner did, however, acknowledge that COVID-19 prevented attorneys from meeting with their clients in jail.

Petitioner alleged that Counsel did not want to develop a case, but only recommended the Petitioner "cop out," meaning plead guilty. Petitioner claimed he told Counsel that he did not want to plead guilty because a guilty plea would negatively affect his parole eligibility. Petitioner also claimed he told Counsel that he was not driving the car involved in the accident which led to Petitioner's arrest. He testified that Counsel told him that if he pleaded guilty, Counsel would appeal his case. Petitioner denied speaking at the plea hearing or standing at the podium and stated that he did not sign his full name on the plea paperwork. He also denied answering "yes" or "no" to the trial court's

questions at the plea hearing.  Petitioner claimed that after the guilty plea, Counsel never discussed an appeal with him, so he filed a pro se appeal which this court dismissed.

Petitioner described his previous parole revocation and post-conviction case in the following exchange with the prosecutor and the post-conviction court:

PROSECUTOR: Were you already revoked on your parole for a charge out of Davidson County in 2013?

PETITIONER: No. Listen, let me explain it to you slowly.  I got out in 2012.  Served 30 calendar years.  They give me good time by me signing some piece of paper back in '86, so I done end up doing 37 years, but we ain't going to count that . . . . I got a charge, my girlfriend charged me.  So my lawyer didn't even - - told me to plead guilty.  So I go to jail.  I file a post-conviction.  I got somebody to file me a post-conviction, 'cause I had a witness showed that she didn't do her job.  She should have investigated that I was on parole, but she didn't do that, so when I filed a post-conviction back in that year in 2013, 2015 . . . the judge ruled in my favor.  Said, look, he had to make a special order, said look - - this later was ineffective counsel, because she should have knowed [sic] about it or should have checked into my background and see'd [sic] that I was on parole - -

PROSECUTOR: So Mr. Tate, I understand what you're saying, but the question is you had been charged and convicted in '13 and they revoked you and you won your post-conviction back then?

PETITIONER: And they let me back out.

PROSECUTOR: Okay.  So now, we're here again, you've been charged, convicted and you've post-convicted again?

PETITIONER: Yep.

PROSECUTOR: Okay.

PETITIONER:  The only way I can get back out is I get that charge off me.

THE COURT: Well, but aren't you saying that you understood the law maybe better than your counsel, but you made the decision to allow a conviction to go down?

- 6 -

PETITIONER: No, I told him what -- I don't suppose to tell him what to do, but I'm trying to explain to him what he had to do, 'cause I ain't no lawyer myself. You know, he's suppose [sic] to be my lawyer.

Counsel testified that he began practicing law in 1999 and had represented many other criminal defendants, including over 100 DUI defendants. By the time Counsel was appointed to Petitioner's case in circuit court in March of 2020, at least two other appointed attorneys had represented Petitioner in the same case. After Counsel was appointed, he received a copy of the general sessions warrant, indictment, and the blood alcohol test that revealed Petitioner's blood alcohol was 0.183, more than twice the legal limit. Due to COVID-19 restrictions, Counsel was unable to visit Petitioner in jail, and therefore their communication was limited to phone calls, letters, and visits when Petitioner appeared for court. Counsel recalled receiving "several phone calls" from Petitioner, who also sent Counsel "mail or . . . cases to look at." Counsel said the mailings did not concern Petitioner's plea or probation.

Counsel stated that Petitioner believed he had a statute of limitations claim and that the search warrant for his blood was possibly deficient. Counsel testified he investigated the statute of limitations claim, and found the warrant was timely filed and signed by a duly appointed judicial commissioner in Franklin County. Counsel relayed this information to Petitioner, but "[Petitioner] just would not listen." When asked if they discussed "an issue about the authorized official signing the warrant and search warrant for the blood," Counsel replied, "I don't recall. We may have . . . but I don't think [Petitioner] brought that up before."

Counsel testified that he filed an amended motion to "dismiss or suppress the stop" based on a lack of probable cause because the arresting officer did not see Petitioner driving the vehicle at the time of the accident.[1] Counsel recalled Petitioner was presumed to be driving because he was the only person present at the accident scene, and when Counsel asked Petitioner to provide information about any other possible drivers, Petitioner provided Counsel with no one. The circuit court denied the motion to suppress, but Petitioner initially remained determined to go to trial.

Shortly after the motion was denied, however, Petitioner called Counsel and said he wanted to plead guilty so that he could be released on parole. Counsel recalled the issue of Petitioner's parole "was a situation we had to discuss." According to Counsel,

---

[1] We were unable to find a written motion to suppress in the record; however, Counsel testified he did file the motion, and that the circuit court denied the motion.

Petitioner told him the pending charges were affecting Petitioner's release eligibility, so Counsel met with the District Attorney General's office and the parties worked out a deal for Petitioner to plead guilty and receive time served. Counsel then recommended that Petitioner should plead guilty. Counsel acknowledged he did not think he discussed Petitioner's parole eligibility with the parole board. Counsel recalled that at the plea hearing, Petitioner "was very candid with the Court when he stood there at the podium" and answered the trial court's questions.

Counsel was adamant that he and Petitioner did not discuss the possibility of an appeal or reserving a certified question of law, and Counsel was surprised when he received the order from this court requesting a response following Petitioner's pro se notice of appeal. After Counsel filed a motion with this court asking for a thirty-day extension to speak with Petitioner before filing a response, he received a phone call from Petitioner, who said, "[d]o not file anything, it's none of your business. You're done with me being my attorney. I don't want you to file anything. I'm taking care of it."

At the end of the post-conviction hearing, the post-conviction court made an oral finding that Counsel was not ineffective in representing Petitioner. The court initially filed a written order finding that Petitioner's "guilty plea was freely, intelligently, knowingly, and voluntarily made," that Petitioner "was provided with effective legal representation," and that "trial counsel's performance was not deficient" and denying Petitioner's request for post-conviction relief.

On July 12, 2023, this court filed an opinion affirming the order of the post-conviction court. *Tate v. State*, No. M2022-01358-CCA-R3-PC, 2023 WL 4489447 (Tenn. Crim. App. July 12, 2023) *appeal granted, order vacated*, 679 S.W. 3d 631 (Tenn. 2023). In our opinion, we acknowledged that the post-conviction court's written order did not contain written findings of fact and conclusions of law with regard to each ground raised, but we concluded that the court's oral findings of Petitioner's claims at the hearing allowed our review in accordance with our court's precedent. *Tate*, 2023 WL 4489447, at *5 n. 2.

On November 22, 2023, the Tennessee Supreme Court vacated our opinion by published Per Curiam Order and remanded the case to the Franklin County Circuit Court for the entry of "a sufficient order" that complied with Code section 40-30-111(b). *Tate v. State*, 679 S.W.3d 631, 632 (Tenn. 2023). Code section 40-30-111(b) reads:

> Upon the final disposition of every petition, the court shall enter a final order, and except where proceedings for delayed appeal are allowed, shall set forth in the order or a written memorandum of the case all grounds

presented, and shall state the findings of fact and conclusions of law with regard to each ground.

Our supreme court determined that "[t]he order entered by the trial court summarily denied the petition but did not address the issues raised in the petition as required by statute." *Id*. The supreme court noted the previous judge who conducted Petitioner's post-conviction case had retired and ordered the case to be assigned to another circuit judge, who "may enter findings based upon the record" or conduct a new hearing and enter an amended order. The supreme court stated that "the Court of Criminal Appeals may order additional briefing, if appropriate, and thereafter shall reconsider the case." *Id*.

On May 29, 2024, the post-conviction court entered a detailed amended written order denying Petitioner's claims, finding as follows:

1) It is this [c]ourt's finding that Counsel for the [Petitioner] gave every opportunity for [Petitioner] to offer more evidence as to his innocence, and was not presented with such. That this barrier, along with the blood test results, and the testimony of the State Trooper would have more than likely resulted in a conviction despite the efforts of [C]ounsel. This [c]ourt specifically finds that Counsel for [Petitioner] approached his assignment with diligence. This [c]ourt finds that despite his advice, [Petitioner's] insistence of going to trial [was] adhered to by Counsel and this matter was set for trial. It was [Petitioner], who initiated the call to his attorney, that prompted the guilty plea.

2) It is this [c]ourt's finding that [Petitioner] and his Counsel had adequate time to discuss the case, devise relative defenses, discuss the inherent problems with pleading guilty and/or going to trial. This [c]ourt finds that [Petitioner] had ample opportunity when questioned by the trial judge at the [p]lea hearing to ask more definitive questions concerning any of [Petitioner's] outstanding questions and he did not do so. [Petitioner's] seemingly lack of concern during the [p]lea hearing indicates that he was understanding the process and accepted the consequences of his plea. Counsel for [Petitioner] communicated appropriately with [Petitioner] and when the trial court asked [Petitioner] if he was satisfied with his attorney's representation he answered in the affirmative.

3) This [c]ourt also finds that Counsel was not deficient in his inquiries into the ultimate consequences to a guilty plea by the defendant despite his protestations, [Petitioner] was the one who initiated the plea. [Petitioner]

offered no conclusive evidence that his guilty plea did indeed have an adverse effect on his current sentence. He did not offer any proof that by going to trial, whatever the outcome, his current status with TDOC would have changed. He only offered anecdotal and self-serving testimony. [Petitioner] bears the burden of proving by clear and convincing evidence to the contrary. This [c]ourt specifically finds that [Petitioner] failed to make a showing of any prejudice to his case and that his Counsel . . . performed below the legal standard.

4) This [c]ourt specifically finds that [Petitioner] entered his plea of guilty understanding the nature and consequences of said plea. This [c]ourt also finds that [Petitioner has the intellectual wherewithal and experience to understand the plea he entered into. He conferred with his attorney before the plea hearing, he stated to the [c]ourt that he was literate and he did not have any questions when asked by the [c]ourt. The [c]ourt also notes that the Petitioner affirmed the facts making up his charge, and acknowledged to the trial court that he understood he was pleading to DUI.

## II. Analysis

The Post-Conviction Procedure Act provides:

Upon the final disposition of every petition, the court shall enter a final order, and except where proceedings for delayed appeal are allowed, shall set forth in the order or a written memorandum of the case all grounds presented, and shall state the findings of fact and conclusions of law with regard to each ground.

Tenn. Code Ann. § 40-30-111(b). Tennessee Supreme Court Rule 28, section 9(A) also requires specific findings of facts and conclusions of law. In its Per Curiam Order remanding this matter for the entry of an amended written order in compliance with Code section 40-30-111(b), the Tennessee Supreme Court made clear "[t]he post-conviction court's duty under the statute is mandatory." *Tate v. State*, 679 S.W.3d 631, 632 (Tenn. 2023). Any of this court's precedent to the contrary, *see e.g. State v. Higgins*, 729 S.W.2d 288 (Tenn. Crim. App. 1987), is therefore abrogated by the Per Curiam Order. *See Tate*, 679 S.W.3d at 632. After review of the record on remand, we conclude that additional briefing is not necessary for the resolution of this case, and we now reconsider Petitioner's appeal.

- 10 -

On appeal, Petitioner alleges that he received ineffective assistance of counsel for three reasons: (1) Counsel failed to investigate and develop Petitioner's case, (2) Counsel failed to effectively communicate with Petitioner, and (3) Counsel failed to investigate the effect Petitioner's guilty plea would have on his parole status. Petitioner also argues that his guilty plea was not knowingly and voluntarily entered, in part because Counsel failed to advise him the impact of his guilty plea on his parole status. The State argues that the post-conviction court properly denied Petitioner's relief on his claim of ineffective assistance of counsel, and that Petitioner's guilty plea was knowingly and voluntarily entered.

## A. Standard of Review

To obtain post-conviction relief, a petitioner must establish his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A petitioner bears the burden of proving the factual allegations contained in the petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 296 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger*, 279 S.W.3d at 292 (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, a post-conviction court's findings of fact will not be disturbed unless the evidence contained in the record preponderates against the findings. *Brooks v. State*, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988); *Clenny v. State*, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). However, conclusions of law are given no presumption of correctness on appeal. *Dellinger*, 279 S.W.3d at 293; *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). An ineffective assistance of counsel claim presents a mixed question of law and fact. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

We review "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013) (citing *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011); *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011)). However, the post-conviction court's underlying findings

of fact may not be disturbed unless the evidence preponderates against them. *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009) (citing Tenn. R. App. P. 13(d); *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006)). Therefore, the appellate court is "not free to re-weigh or re-evaluate the evidence, nor [is it] free to substitute [its] own inferences for those drawn by the post-conviction court." *Whitehead*, 402 S.W.3d at 621 (citing *State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001)).

## B. Ineffective Assistance of Counsel

Both the Constitutions of the United States and the State of Tennessee guarantee criminal defendants the right to effective assistance of counsel. U.S. Const. amend VI; Tenn. Const. art. I, § 9. Under the Sixth Amendment to the United States Constitution, when a petitioner raises an ineffective assistance of counsel claim, the burden is on the petitioner to show both (1) counsel's performance was deficient and (2) the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockart v. Fretwell*, 506 U.S. 364, 368-372 (1993). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). To prevail on such a claim, a petitioner must prove both prongs of the *Strickland* test, and failure to prove either is "a sufficient basis to deny relief on the claim." *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "[A] court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996).

To prove that counsel's performance was deficient, a petitioner must establish that his attorney's conduct fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence….Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Finch v. State*, 226 S.W.3d 307, 315-16 (Tenn. 2007) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 934-35 (Tenn. 1975)). A reviewing "court may not second-guess the tactical and

strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation." *Alley v. State*, 958 S.W.2d 138, 149 (Tenn. Crim. App. 1997) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). A reviewing court cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994).

To prove prejudice, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* As such, a petitioner must establish that his or her attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *Burns*, 6 S.W.3d at 463).

To demonstrate ineffective assistance of counsel in the context of a guilty plea, a petitioner must prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill*, 474 U.S. at 56 (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

## 1. Failure to Investigate

Regarding Counsel's representation, Petitioner argues that Counsel failed to investigate facts and develop a case and failed to effectively communicate with him. At the post-conviction hearing, Petitioner claimed that Counsel did not request the State's entire file, and argued had Counsel done so, he would have gleaned information from the preliminary hearing to develop a defense for Petitioner's case. Conversely, Counsel testified that he received partial discovery from the State that included Petitioner's blood alcohol test results of .183, a number more than twice the legal limit (.08).

Petitioner also disputed that he was driving the car at the time of his arrest. In Petitioner's brief, he argues that even if he "was unable to tell his counsel who was driving, it would still be an important matter to discover who might have actually been driving by questioning the depth and scope of the police investigation, since there was no testimony presented that [Petitioner] was seen driving the car." But at the post-conviction hearing, Counsel stated that he remembered "begging and pleading with [Petitioner] to tell [him] somebody else was driving that vehicle other than [Petitioner]. . . because [he was] the

- 13 -

only person there," and therefore, the officer had probable cause to arrest him. Counsel also investigated Petitioner's jurisdictional and statute of limitations claims and concluded they did not entitle Petitioner to relief.

In its written order, the post-conviction court found Counsel did not perform deficiently because "Counsel . . . gave every opportunity for [Petitioner] to offer more evidence as to his innocence, and was not presented with such." Further, the court found Counsel "approached his assignment with diligence." The record supports the post-conviction court's finding that Counsel did not perform deficiently, and as such, we will not disturb the post-conviction court's findings on appeal.

The post-conviction court also found Petitioner could not show prejudice, because Petitioner's failure to provide Counsel any exculpatory evidence "along with the blood test results, and the testimony of the State Trooper would have more than likely resulted in a conviction despite the efforts of [C]ounsel." We agree. Petitioner was the only person found by the wrecked car and had a blood alcohol level of .183. Petitioner's chances of an acquittal were low and Petitioner appeared to know it. As the court stated, it was Petitioner who chose to plead guilty. Therefore, we conclude nothing in the record preponderates against the post-conviction court's findings and Petitioner is not entitled to relief on this issue.

## 2. Failure to Communicate

Next, Petitioner's assertion that Counsel failed to adequately communicate with him is not supported by credible evidence. At the post-conviction hearing, Counsel testified he received several phone calls and letters from Petitioner and spoke with him each time Petitioner appeared for court appearances. Both Petitioner and Counsel testified that the COVID-19 pandemic, which began around the time Counsel was appointed in March 2020, prevented in-person visits between Petitioner and Counsel while Petitioner was in custody before the guilty plea. In its written order, the post-conviction court found Counsel's performance was not deficient and stated that Petitioner and Counsel "had adequate time to discuss the case, devise relative defenses, discuss the inherent problems with pleading guilty and/or going to trial." The court further found that during Petitioner's plea colloquy, Petitioner displayed no hesitation in pleading guilty and told the trial court he was satisfied with Counsel's representation. The record supports the post-conviction court's findings—when the trial court pointedly asked Petitioner if he was satisfied with Counsel's representation, he answered, "[y]es, sir." The post-conviction court did not err in denying relief on this issue.

Petitioner also faults Counsel for not investigating how Petitioner's guilty plea would have affected his release eligibility.  However, Counsel testified he and Petitioner discussed this issue, and both Petitioner and Counsel agreed that Petitioner would plead guilty to resolve the pending DUI charges, which Petitioner believed were hindering his potential release from state custody.  As the post-conviction court found, Counsel was not deficient because Petitioner "was the one who initiated the plea" and "offered no conclusive evidence that his guilty plea did indeed have an adverse effect on his current sentence."  We agree with the post-conviction court that Petitioner has failed to show Counsel performed deficiently.  Furthermore, the record shows that Petitioner did not present any evidence that his guilty plea adversely effected his release eligibility beyond his own self-serving testimony.  Petitioner did not argue relevant statutes, case law, or administrative rules at the post-conviction hearing, and presented no witnesses or proof from TDOC which could have clarified this issue.  Therefore, because Petitioner also has failed to show prejudice, the post-conviction court did not err in denying relief on this issue.

### 3. Guilty Plea

A guilty plea must be entered knowingly, voluntarily, and intelligently.  *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969).  If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because the appellant has been denied due process.  *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5).  To make such a determination, the court must examine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *Id*.  To be a voluntary and knowledgeable guilty plea, a defendant must be made aware of the significant consequences of such a plea.  *State v. Pettus*, 986 S.W.2d 540, 542 (citing *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977).

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats.  *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).  A trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences.  *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904.  Courts look to the following factors in determining whether a defendant's guilty plea was knowing and voluntary:

> [T]he relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty,

including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904.

Turning to Petitioner's guilty plea, Petitioner essentially argues that Counsel's deficient performance in failing to investigate how Petitioner's guilty plea would affect his parole rendered his plea involuntary and unknowing. We have already concluded Counsel's performance was not deficient, but we will briefly examine this issue.

An application of the *Blankenship* factors to Petitioner's case leads us to conclude that Petitioner voluntarily entered his guilty plea. First, as to Petitioner's relative intelligence, at the plea hearing Petitioner confirmed that he was literate, that he had reviewed the plea paperwork, and that he did not have any questions about the documents he signed. Next, the record indicates that Petitioner was familiar with criminal proceedings not only because he had more than a year in jail prior to his plea, but also because he had served more than thirty years in prison for a murder conviction. Additionally, Petitioner had the opportunity to confer with several court-appointed attorneys about his case and ask the trial court questions when he appeared in court. Most importantly, however, is that according to Petitioner's testimony, he had pleaded guilty to a previous charge while on parole and had successfully challenged that plea because it had revoked his parole. Through that process, Petitioner was surely familiar with the criminal justice system and the consequences of his guilty plea. As the post-conviction court found in its order, Petitioner had "the intellectual wherewithal and experience to understand" his guilty plea.

The remainder of the *Blankenship* factors also weigh against Petitioner. Counsel was appointed to Petitioner's case with over twenty years of criminal law experience, and he had handled well over 100 DUI cases. During the post-conviction hearing, Counsel testified that during the time he was reviewing Petitioner's case, they communicated regularly through phone calls and mail because of COVID-19 restrictions at the prison. Counsel testified that he received several phone calls and letters from Petitioner, but those communications were about the statute of limitations and not his plea or parole. As stated above, Counsel reviewed the statute of limitations question, and concluded it was not an issue that would have entitled Petitioner to relief. Counsel did file a motion to suppress the stop based upon a lack of probable cause, but the trial court denied the motion. Further, Petitioner did not provide Counsel with any information to rebut the presumption that Petitioner was driving at the time of the accident, and the guilty plea allowed Petitioner to resolve the DUI case with a sentence of time served. For these reasons, we conclude that

- 16 -

Counsel's recommendation to plead guilty in the DUI case did not render Petitioner's guilty plea involuntary.

The evidence from the post-conviction hearing established Petitioner pleaded guilty because he believed he was not going to have a parole hearing until his DUI case was resolved. Petitioner hoped that by entering the plea, after serving the maximum sentence for his DUI, he would be released to parole, but that was not the case. While Petitioner blames Counsel for his (Petitioner's) misunderstanding, the record reflects that during Petitioner's guilty plea hearing, he twice told the trial court he was satisfied with his legal representation. Petitioner never expressed any dissatisfaction of Counsel's representation to the trial court or expressed any hesitation about how his guilty plea would affect his parole. In its written order, the post-conviction court found that Petitioner's guilty plea was voluntarily entered, stating Petitioner "entered his plea of guilty understanding the nature and consequences of said plea." The court further found that Petitioner "affirmed the facts making up his charge, and acknowledged to the trial court that he understood he was pleading to DUI." Additionally, the court correctly noted that when Petitioner had the opportunity to present evidence at the post-conviction hearing concerning the effect of his plea on his release eligibility, he failed to do so.

Petitioner is not entitled to relief because he has failed to establish Counsel's representation led to an involuntary and unknowing guilty plea. The post-conviction court found no coercion by Counsel and determined that Petitioner entered the plea knowingly and voluntarily. As the post-conviction court correctly stated, Petitioner "offered no conclusive evidence that his guilty plea did indeed have an adverse effect on his current sentence." Petitioner chose to plead guilty because he hoped for a better outcome that did not happen. He had ample opportunity to raise any concerns before he pleaded guilty but chose not to. Petitioner is not entitled to relief.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the judgment of the post-conviction court.

_____
MATTHEW J. WILSON, JUDGE